**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

JAN 1 2 2024

TAMMY H. DOWNS, CLERK
By: _____
                    ~~~~ CLERK

IN THE UNITED STATES DISTRICT COURT

# Eastern District Of Arkansas
## Central Division

| | | |
|---|---|---|
| Corey D. Richmond | ) | Case No. _____ |
| *Plaintiff,* | ) | 4:24-cv-32-BSM |
| | ) | Judge: **Miller** |
| Vs. | ) | |
| | ) | Magistrate Judge: **Kearney** |
| **Little Rock Office of Child Support Enforcement and** | ) | **TRIAL BY JURY** |
| **Brandy L. Williams** | ) | |
| *Defendant(s),* | ) | |

**EMERGENCY MOTION**

COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND

PERMANENT INJUNCTION GARNISHING OF WAGES, GARNISHING OF MY FEDERAL AND STATE INCOMES TAXES,

FOR ALLEGED CHILD SUPPORT.

***COMES NOW,*** **Corey D. Richmond**, pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and files its

Complaint for Declaratory Judgment. Temporary Restraining Order, Preliminary and Permanent Injunction, to-wit:

**COMPLAINT**

***(TRIAL BY JURY IS REQUESTED)***

This complaint is filed to seek relief from a fraudulent contract that the **Little Rock Office of Child Support**

**and Brandy L. William, Etal** had me enter into a contract with my signature on court documents unwittingly,

thereby creating a debt that they can collect on in using court orders, and judgments, as well as wage

garnishments, withholding my income tax returns etc., to enforce fraudulent debt and alleged interest. And, that

the Customer Services and the 45 CFR 302.34 contractors are under the Executive Branch. This is in direct violation

of my civil rights. To be absolutely clear this complaint before the federal court is not a matter involving the

***Rooker-Feldman Doctrine,*** because it's not an attempt to ask the U.S. District Court to overturn a judgment or

order issued by the State Courts. It's a matter who main focus is concerning the Constitutionality of State statutes,

codes, and ordinances that infringe upon my civil rights guaranteed under the U.S. Constitution, and not a hearing

on de facto appeals. 1209.5 (West 1982), governing the Prima Facie showing of contempt of a court order to make

child support payments, was unconstitutional under the 14th Amendment's Due Process Clause because it shifts to

the defendant (Non-Custodial Parent) the burden of proof as to the ability to comply with the order, which is an element of the crime of contempt. All codes, rules and regulations are applicable to the government authorities only, not human/Creators in accordance with God's Laws. All codes, rules and regulations are unconstitutional and lacking in due process. *Rodriques vs. Ray Donavan* (U.S. Department of Labor, 769 F. 2d 1344, 1348 (1985) and see- *JONES v. MAYER CO.*, 392 U.S. 409 (1968), which states, *"In plain and unambiguous terms, 1982 grants to all citizens, without regard to race or color, "the same right" to purchase and lease property "as is enjoyed by white citizens." As the Court of Appeals in this case evidently recognized, that right can be impaired as effectively by "those who place property on the market" as by the State itself."* I have copy as it pertains to 42 USC 1982.

The California Court of Appeals annulled the contempt order, ruling that 1209.5

purports to impose *"a mandatory presumption compelling a conclusion of guilt without independent proof of an ability to pay,"* **and is therefore unconstitutional because** *"the mandatory nature of the presumption lessens the prosecution's burden of proof."* The court went on to state that for future guidance, however, the statute should be construed as authorizing a permissive inference, not a mandatory presumption.

## PARTIES

1. **Corey D. Richmond**
   **503 East 40ᵗʰ Avenue**
   **Pine Bluff, Arkansas 71601,** *Plaintiff*

2. **Little Rock Office of Child Support Enforcement**

   _____

   _____, *Defendant(s)*

## I.    JURISDICTION

1.  Jurisdiction of this Court is invoked pursuant to Title 28 of the United States Code, Section 1331 and 1343, this being a suit in equity authorized by Title 42 of the United States Code, Section 1983. Jurisdiction is

2.  further invoked under Title 28 of the United States Code. The Plaintiff, a resident of the **State of Arkansas**,

3.  sues Defendant(s) a corporation of the **State of Arkansas** is in the U.S. District Court alleging that Defendant(s) caused him severe damages in excess of over $75,000, exclusive of costs and other interests, as a result of Fraud perpetuate by **Little Rock Office of Child Support Enforcement Support Services.** The United States District Court has Original Jurisdiction, exclusive of the court of the states, over all civil actions where the matter in controversy is no less than $75,000, exclusive of the interests and costs, and is between citizens of different states. The must grant the motion because the jurisdictional amount is criteria is met. And the District Court has Diversity Jurisdiction 28 U.S.C. 1332. Federal Law Title IV-D of Social Security Act Pub.1, No. 93-647, 88 Stat. 235 (1975), 42 U.S.C. (8/22/1996), as amended created my cause of action. 42 U.S.C. 658(A) and (F) provides profit for practice of the above. By contract Title 42, The Public Health and Welfare, is a non-positive law title. Title 42 is comprised of many individually enacted Federal Statues, such as Public Health Service Act and the Social Security Act- that have been editorially complied and organized into the titles but the title itself has not been enacted. 42 U.S.C. 1983 Depravation of Right under Color of Law itself provides relief. (B) Non-Positive Federal created cause of action, and federal law itself provides my relief then the Federal District Court has Subject Matter Jurisdiction under Federal Question Jurisdiction.

4.  The Federal Court has jurisdiction under 28 U.S.C. 1331, arises pursuant to federal laws or statues that apply to this case, and the district courts have subject matter jurisdiction in all civil actions arising under the Constitution, Laws, or Treaties of the United States. This is clearly a case of federal question. This is a non-criminal case. Under Article III of the U.S. Constitution. The Constitution and 28 U.S.C. 1332 vest Federal Courts with jurisdiction to hear cases that *"arise under"* federal law. The Constitution vest Federal Courts with the authority to hear cases *"arising under the Constitution or the Laws or the United States."*

U.S. Const. Art. III, 2. 15 Moore's Federal Practice Paragraph 103.02 (noting the Article III and statutory requirements). Both the Constitution and 1331 use the same "arising under" language. The Supreme Court has interpreted the Constitutional use of "arising under" differently than the congressional use of *"arising under"*. Article III *"arising under"*. Jurisdiction is broader than federal question jurisdiction under 1331. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 495 (1983). (Holding that foreign Sovereign Immunities Act of 1976 does not violate Article III of the Constitution). Jurisdiction was therefore upheld. Also see *Int'l Union Operating Eng'rs v. Ward*, 563 F. 3d 276 (7th Cir. 2009) (citing *Verlinden,* 461 U.S. at 494-95). Under Federal Law Title IV-d of the Social Security Act, Pub.1, No. 93-647, 88 Stat. 235(1975), 42 U.S.C. 651 (as amended created the cause of action) 42 U.S.C. 658(a) and (i) provides profit for the practice of the above. The Supreme Court has recognized two *"threshold grounds"* on which a court can resolve a case without addressing subject matter jurisdiction: (1) personal jurisdiction and (2) forum non conveniens. Ruhgras AG v. Marathon Oil Co., 526 U. S. 574 (1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry."); *Sinochem Int'l Co. Ltd. V. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 425 (2007) (applying exception to forum non conveniens). The Ninth Circuit has held that the personal -jurisdiction exception to the jurisdiction-first rules is limited to cases where deciding the personal jurisdiction issue would result in the end of the case. *Special Invs. Inc. v. Aero Air, Inc.* 360 F. 3d 989, 994-95 (9th Cir. 2004). In Special Investments, the court held that it was improper for the district court to dismiss an action against a defendant when other defendants remained without first deciding whether it had subject matter jurisdiction. Id.  The D.C. Circuit has provided a test to determine when a court can decide an issue before adjudicating jurisdiction: a court can decide an issue before jurisdiction if the issue does not involve *"an exercise of a court's law-declaring power..."* See *Kramer v. Gates*, 481 F. 3d 788 (D.C. Cir. 2007). A court exercises its law-declaring power when a ruling has an effect on *"primary conduct"*. See id. (Citing *Hanna v. Plumer*, 380 U.S. 460, 475 (1965) (Harlan, J.,

concurring) (classifying rules affecting *"primary decisions respecting human conduct"* as substantive for purposes of Erie R. R. Co. v. Tompkins, 304 U. S. 64 (1938).

5. Seeing that the *"primary purpose"* of federal question jurisdiction *"is to ensure the availability of a forum designed to minimize the danger of hostility toward, and specially, suited to the vindication of, federally created rights".* 15 Moore's Federal Practice paragraph 103.3.

Both the Constitution and 1331 use the same *"arising under"* language. The Supreme Court has interpreted the constitutional use of *"arising under"* differently than the congressional use of *"arising under":* "Article III 'arising under 'jurisdiction is broader than federal question jurisdiction under 1331." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 495 (1983) (holding that the Foreign Sovereign Immunities Act of 1976 does not violate Article III of the Constitution).

When determining whether a claim arises under federal law, a court will *"examine the well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003) (jurisdiction upheld).

**Jurisdiction Upheld:**

Freeman v. Burlington Broadcasters, Inc., 204 F. 3d 311, 317 (2d Cir. 2000) (noting that "a state law complaint, filed in a state trial court, that tries to anticipate a defense of federal preemption will not support federal question removal jurisdiction unless the limited doctrine of complete preemption applies").

Under the complete-preemption doctrine, even if a plaintiff seeks *"a remedy available only under state law,"* the complaint will still raise a federal question for any cause of action that *"comes within the scope"* of the preempting federal cause of action. Franchise Tax Bd. V. Constr. Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983) (citing Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists, 290 U.S. 557 (1968) (Jurisdiction upheld).

Labor Management Relation Act 301 completely preempt state law causes of action. ERISA 502(a) preempts state common law contract and tort claims. See Aetna Health Inc. v. Davila, 542 U.S. 200, 207-09 (2004) (jurisdiction upheld).

In short, because the Circuit Court of the State of Illinois Office of Child Support Enforcement Title IV-D Programs are purely administrative in nature, as well as tribunals as identified and attested to in the supporting documents in this case.

There is not a method for Remedy and Recourse. And Due Process Clause of the 14th Amendment is not considered, in fact, its ignored, and thereby the defendant(s) is actively violating my Civil Rights, and thereby nor granted in for relief in the matter before the Federal District Court. Which is a direct violation of my Constitutional Rights.

**CLAIMS**

There is a contract with the State. Under 31 U.S.C. 6305- Using cooperative agreements. Therefore, the defendant is claiming that there is a debt on the plaintiff part but they have never validated the debt, nor produce a True Bill in compliance with the FCRA. The State is acting in the capacity of a debt collection agency for the custodial parent. Therefore, as such they must comply to the same rules as any other business or corporation regarding Fair Debt Collection Acts. Instead, the State is threating contempt charges either civil or criminal contempt, if I fail to pay "alleged child support debt". The **State of Illinois** fail to act on informing the Plaintiff that he had the right to dispute their claim of alleged child support debt in court. The State violated the Plaintiff civil rights and this entitled the Plaintiff to sue the corporation known as **Little Rock Office of Child Support Enforcement, it's Director**. And because these set of facts are true, entitle and the Plaintiff to be awarded a remedy by a Court of Law. Due to the fact that the Circuit Courts of Cook County Judges, and Chief Judge have a contract with the **State of Arkansas Office of Child Support Enforcement/or TITLE IV-D**, it would be a conflict of interest for this case to be heard there as the obvious biases would exist. Therefore, the proper venue would have to be the U.S. District Court in order to have an impartial hearing on these matters. **The Little Rock Office of Child Support Enforcement** enter into a contract with the Plaintiff knowingly committing Fraud to get the Plaintiff to sign the contract in the circuit court not being informed that it is a contract agreement creating a burden of debt to the Plaintiff. A material representation was made; the representation was false; when the representation was made, the defendant knew it was false, or made a positive or compelling assertion without having knowledge of the true facts of this matter. The defendant made the representation with the intent of causing the Plaintiff to act. The Plaintiff acted, relying solely upon the Defendant's false representation. The Plaintiff was thereby damaged or suffered injury because of the act or mis-representation. They therefore further committed Tort (intentional or negligent infliction of emotional distress, slander, and invasion of privacy) of the Plaintiff. Child Support is considered "unlawful" because it is not legally required as a matter of Constitutional Law.

A.  **Defamation:** A false or offensive statement, either both verbal and written, about the Plaintiff was made by the Defendant. The Defendant made such statements to a third party (i.e., Credit Bureaus); Department of Motor Vehicles; State Department, etc., The Defendant acted negligently or with malice in making such statement. The Plaintiff suffered damages, including damage to his reputation specifically cause defamatory statement.

B.  **Intentional Infliction of Emotional Distress:** The actions or conduct of the Defendant were extreme and

outrageous the Defendant acted intentionally and /or recklessly. And the Defendant's actions or conduct caused severe emotional distress to the Plaintiff. **This also includes False Imprisonment by has the Plaintiff incarcerated in the County Jail trying to force him to comply to a so called "Purge Order"!**

C. Therefore, the claim is for seeking monetary relief against the Defendant in the amount of $2,500,000, along with compensatory damages, and if necessary punitive damages accordingly for loss of my job while they had me incarcerated for 3 weeks (wrongful imprisonment) for civil contempt of court charges, without holding a hearing to see if I had the capacity to pay, which is a violation of my Civil Rights and Due Process, stress, loss of income, loss of my job, damage to my character, gender discrimination, and racial discrimination as well due to the systematic profiling, which evidence will be provided in the accompanying exhibits during the trial. Using the debtor's prison which was abolished in 1833!

D. The States are not even following their own guidelines when it comes to child support laws in their state! The States must abide by and defer to child support orders entered by courts in the child's home state! But often times they don't even follow their own rule regarding this matter! The CEJ *"Continuing Exclusive Jurisdiction"* is granted to the place where the order was originally created and only the law of the state with (CEJ) may be applied to modification request, or dropping the case, or answering federal complaints regarding Child Support being an illegal dispute Due to violations of State and Federal Laws and By Law the Garnishment of wages must cease and desist, pending the results of the Dispute resolution by the U.S. District Court! Due Process is the order of the day. Which why these cases end up in District Court because of direct violation of the Non-Custodial Parent's Civil Rights.

The Common Law is the real law, the Supreme Law of the land, **the codes, rules, regulations, policy, and statutes are *"not" the law".** (*Self v. Rhay,* 61 Wu (2d) 261. Legislated statutes enforced upon the people in the name of law are fraud. They have no authority and are without mercy! Justice without mercy is Godless and therefore repugnant to our United States Constitution. **Lawmakers were given authority by The People to legislate codes, rules, regulations, and statutes which policies, procedures, and *"law"* to control the behavior of bureaucrats,**

elected and appointed officials, municipalities and agencies, but never given authority to control the behavior of The People, as we read in the U.S. Supreme Court decision. *"All codes, rules, and regulations are for government authorities only, not human/creators in accordance with God's Law. All codes, rules, and regulations are unconstitutional and lacking in Due Process..."* [Rodriques v. Ray Donavan (U.S. Department of Labor) 769 F. 2d 1344, 1348, (1985)] and again *"All Laws, rules and practices which are repugnant to the Constitution are null and void"* [Marbury v. Madison, 5th U.S. (2 Cranch) 137, 174, 176, (1803)]. Legislators simply don't have the authority to rule-make "where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate [Miranda v. Arizona, 384 U.S. 436, 491]

For the alleged child support the state seized my, Federal and State Income Taxes, even while they are still garnishing my wages from my employment at Amazon. The state further seized all of my winnings at the Rivers Casino, and the alleged owed amount still is the same and has never been reduced one iota! It seems that once a non-custodial parent is within the Child Support & Title IV-D System, the payments never end! No matter if you are on a payment plan, or they garnish your wages, their seems to be no remedy and recourse to bring this process to an end. It's on the same level as a person purchasing a *"Time Share"* as we all know that a Time Share has no end date associated with it. The judge imposed a $600 child support amount monthly payment on me even though I informed her that I was unemployed at the time, attending graduate school and she didn't seem to care! It was a figure she pulled out of thin air! **When the government proceeds against you criminally or civilly it must follow established procedures and not make up the rules as it goes along**. In other words, the due process clauses are really just protections against unfair government retroactivity. When my attorney requested a motion for a modification order based on this situation at hand, she quickly denied his motion.

**CAUSE OF ACTION(S):**

**Rule 5.1 Constitutional challenge to a Statute. It implements 28 U.S.C. 2403, replacing the final three sentences of Rule 24(c). Section 242 of Title 18 makes it a crime for a person acting under color of law to willfully deprive a person a right or privilege protected by the Constitution or Laws of the United States.**

**"Attorneys can't testify; statements of counsel in brief or in oral argument are not facts before the court." – United States v. Lovable 431 U.S. 783,97 S. 2004, 52 L. Ed. 2d 752 and Gonzales v. Buist 224 U.S. 126. 56 L. 693. 32. Ct. 463. S.**

**"A Corporation cannot sue the living man. So, Illinois Department of Healthcare and Family Services Department of Child Support Enforcement can't sue me, for any alleged debt! Rundle v. DELAWARE 7 RARITAN CANAL CO. (1853)**

Title IV-D of the Social Security Act mandates that states provide specific child support enforcement services in order to receive federal funding under the Aid to Families with Dependent Children (AFDC) program. **The states use Implied Right of Action under Title IV-D, but the Supreme Court has adopted a strong presumption against implied rights of action: the plaintiff must affirmatively demonstrate that Congress intended to allow a private right of action under the federal statue. Needy families with children probably could not meet this burden because the test and history of Title IV-D provide no explicit indication of congressional intent to create a private right to action. Section 1983, on its face, provides a cause of action for any violation of a federal statute.** In *Maine v. Thiboutot*, the plaintiffs sued under 1983 claiming that they were deprived of AFDC benefits due them under the Social Security Act. Rejecting the state's argument that 1983 be limited to civil rights or equal protection statutes, the Court held that 1983 may be triggered whenever a person acting under color of state law violates a federal statute. But the Court in *Thiboutot* did not elaborate a standard for determining, in the context of a specific statute, whether 1983 provides a cause of action. **The court reasoned that the primary purpose of Title IV-D does not create enforceable right on behalf of needy families with children because they are not the intended beneficiaries of the statute. The court reasoned that the primary purpose of Title IV-D was to recoup the state's welfare expenditures on behalf of needy families by collecting child support from absent parents.** While the AFDC program itself was intended to benefit the public treasury and taxpayers by reducing the present and future welfare rolls. The court pointed to the legislative history of Title IV-D. Section 1983, on its face, provides a cause of action for any violation of a federal statute. In *Maine v. Thiboutot*, the plaintiffs sued under 1983 claiming they were deprived of AFDC benefits due them under the Social Security Act. Rejecting the state's argument that 1983 be limited to civil rights or equal protection statutes, the Court held that 1983 may be triggered whenever a person acting under color of state law violates a federal statute. But the Court in Thiboutot did not elaborate a standard for determining, in the context of a specific statute, whether 1983 provides a cause of action. Since Thiboutot, the Court has allowed 1983 enforcement only if the statue meets two requirements. First, the statute must create *"enforceable rights"*. Second, the statute must lack a *"comprehensive remedial scheme"*. Section I of this comment discusses how lower courts have approached the issue of 1983 enforcement of Title IV-D. Section II demonstrates that Title IV-D creates enforceable rights on behalf of needy families with children. Section III demonstrates that Title IV-D does not provide a comprehensive remedial scheme. The Court reasoned that the primary purpose of

Title IV-D was to recoup the state's welfare expenditures on behalf of needy families by collecting child support from absent parents. While the AFDC program itself was intended to benefit the public treasury and taxpayers by reducing the present and future welfare rolls. It therefore, has nothing to do with the *"best interest of the child(s)"!*

In 2003, the Office of Management and Budget recognized child support as one of the most effective programs in federal government, and its widely credited for keeping children and their families out of poverty, and it increases the federal and state government bottom lines, it is commonly referred to as ***"The Golden Goose"*** because it is so lucrative, and its only flaw is that the non-custodial parent(s) are the victims of this scam and unconstitutional process! So, State legislatures have enacted laws focused on Non-Custodial Parents (which are unconstitutional, discriminatory, gender bias, and racist in nature to begin with) who don't, or are unable to, pay child support. These policies overlap into what now becomes criminal contempt cases. The Non-Custodial Parents with child support orders because of this new legislation can intersect with the criminal justice system. A Non-Custodial Parent that is not in compliance with a child support obligation and that non-compliance leads to incarceration as a result of either a Civil Contempt or Criminal Contempt non-support action taken by the State (Wrongful Imprisonment, for a Civil Matter). **Even though a large majority of jurisdictions are using debtor prisons in 2021, even after they have been abolished since 1833, and this is a direct violation of Due Process.** And this makes them liable for lawsuits by the Non-Custodial Parents for direct violations of their Civil Rights! Child Support can be considered *"unlawful"* when it is not legally required by that parent. This means that a parent is paying child support for another child, which they are not obligated to pay for. In order to avoid the unlawful child support orders, state and federal laws have created a somewhat uniform system to enforce and collect the payments from parents. The Child Support Enforcement Act of 1984 grants the authority to district attorneys and state attorney generals to collect back child support on behalf of any custodial parents. This and other federal child support initiatives are operated and managed by the Office of Child Support Enforcement within the U.S. Department of Health and Human Services (DHHS).

**But here are some of the unconstitutional and illegal procedures performed under this 1984 Act:**

1. **Garnishment of wages** (Must Produce a Contract with the State by the Non-Custodial Parents).

2. **Liens against Real Estate, or Property** (Must show legal debt owes with signed contract)

3. **Reporting the debtor to Credit Bureaus;** (By acting as Debt Collector the State must follow FCRA rules and regulations, and validate the debt upon request by the Non-Custodial Parent, otherwise it must be removed and violation of privacy).

4. **Freezing bank accounts:** (Again must produce signed contract, granting this unlawful action).

5. **Suspension of Professional or Driver's License;** (Violation of Right to Travel under the U.S. Constitution, for privileges granted, and suspending professional licenses now they are unable to work or find gainful employment due to this action, and this doesn't help the child or the custodial parent, it only served to punish the non-custodial parent for failure to pay!) the notice must stipulate that driver's license held by the non-custodial parent may be suspended usually 30-90 days after service unless, within that time, the non-custodial parent obligor does one of the following: 1) pays the entire child support debt stated in the notice; 2) enters into a payment plan approved by the department or its agent: 3) complies with subpoenas or warrants relating to paternity or child support proceedings: or 4) request a hearing within 15-30 days of receipt of the notice in order to appear and show cause why withholding, restricted use, or suspension of the license is not appropriate action, for the *"alleged debts"*. **The State Action Clause** of the **14th Amendment declares that a state cannot make or enforce any law that abridges the privileges or immunities of any citizen.** *United States v. Guest, 383 U.S. 745 (1966).*

6. **Contempt Order:** (Civil is debt related is not a crime, and it is unlawful to try to enforce civil debt by false imprisonment Since 1833!) This is a violation of the Non-Custodial Parent's Civil Rights again! The Library of Congress in the United States, debtor's prisons were banned under federal law in 1833. A century later, in 1983, the Supreme Court affirmed that incarcerating indigent debtors was unconstitutional under the 14th Amendment's equal protection clause!

7. **Criminal Contempt:** (False Imprisonment on Frivolous Charges) Because of alleged debt to the State or

Custodial Parent).

When you are unable to make the alleged child support payments, and you hire a local Attorney for further guidance on this issue, you will spend more money (that you don't really have), and because he or she is an Officer of the Court, there is a conflict of interest here, because the State Attorneys/or District Attorneys are Officers of the Court, and the Judge is also an officer of the court too. So, how can you get a fair hearing under these circumstances? Especially seeing that you are standing before a tribunal.

### The Bias begins with Corpus Juris Secundum Volume 7 Section 4, attorneys and Clients

**First Duty not to clients:**

*"Counsel must remember that they, too are officers of the courts, administrators of justice, oath-bound servants of society; <u>that their first duty is not to their clients,</u> as many suppose, but is to the administration of justice; that to this their clients' success is wholly subordinate; <u>that their conduct ought to and must be scrupulously observant of their law and ethics; and to the extent that they fail therein, they injure themselves, wrong their brothers at the bar, bring reproach upon an honorable profession, betray the courts, and defeat justice."</u> -U.S. v. Frank, (D.C. N.J.) 53 F.(2d) 128, 129,* reversed on other grounds (C.C.A.) *Loughlin v. U.S., 57 F. (2d) 1080,* and reversed on other grounds in part *Pearse v. U.S., 59 F. (2d) 518-* In re *Kelly, (D.C. Mont.)* 243 F, 696, 705.

**Conflict of Duties:**

(1) In case of conflict between attorney's duty to client and that to the court, his duty to the court must prevail. -*State v. Barto,* 232 N.W. 553, 202 Wis. 329.

Because most States and State agencies have **<u>Sovereign Immunity</u>** it can be difficult to sue them. **<u>They tend to think that they're invincible because of this! And their first action in Federal District Court is a Motion for Dismissal, because this is expected to be granted by the District Judges, as they do these intentional violations of the Non-Custodial Parents civil rights all the time! However, they can be sued in cases of an intentional wrongful act committed by a State Employee be it a Director, Attorney, etc. Which is done on a daily basis as I have listed above.</u>** This included the **Directors of OSCE, Department of Health and Human Services, U.S. State Department Secretary of State** (Passport violations), **Secretary of State (DVM)** for Driver's Licenses, and any **State Entity Official** suspending non-custodial parent's professional license(s).

Its, sad but true, the Child Support System as it currently stands is a form of modern- day prison for non-custodial parents owing or allegedly owing debt in the form or child support or child support arrearages. And for

the poor, the minorities, people of color, gender discrimination victims, and the dis-enfranchised.

And the sad thing is a lot of the judges in the State Courts can set a payment on what is *"presumed income"*, not what the *"actual income"* of the non-custodial parent makes, and this can cause the fathers to enter into a crushing cycle of wrongful imprisonment by the court. As well as financial hardships. **But if they even manage to pay the debts in full, they are fines and high interest rates charged associated with those support by the State, and this doesn't go to the custodial parents at all. And this is Usury, suggesting that the non-custodial parent borrowed money from the state, when in fact, they didn't! The State is applying usury to an alleged debt, when the non-custodial parent never borrowed any money!** But when all the alleged balance owed is paid, the interest is still listed as *"child support"* by the State, which is intentional fraud to mis-lead the court and the non-custodial parents. And is Unconstitutional on the very nature of how it was levied.

So, when a custodial parent applies for welfare commonly known as SNAP, their ex-husband, or partner will be sued by the State for child support. But the child support doesn't even go the custodial parent, but rather to the State and it is used to pay back the money that the State spent on welfare. And the State keeps any additional money that is above the welfare payment amount given to the custodial parent. This is why this program is considered by the State as it's *"Golden Goose"*. **And the custodial parent can make all kinds of allegations regarding the non-custodial parent not paying child support such as *"he's hiding his money,"* or *"he's lying,"* or *"he gets paid in cash only,"* and he can then be tossed into jail because of the words of the ex-wife, or girlfriend. When the father appears in court for a hearing on this matter the judge oftentimes will ask the custodial parent if they want him freed or to remain in jail? How do they get such power over another human being? This is wrong on so many levels, and that the court and the custodial parents are clearly infringing upon the non-custodial parent's civil rights and freedoms! The question begged to be asked "How can the custodial parent, the judge, and state's attorney/district attorney have so much power over another human being and citizen and free man of the United States?" But it happens every day in the courts across America!** The current system is corrupt, unconstitutional, and is against non-custodial parents, and treat them as **debtor's prisoners, even though this archaic law was abolished over 190 years ago!** But yet the State Courts still use Criminal contempt in their tool box arsenal against the non-custodial parents. Which is why they can be sued because these are intentional willingly wrongful acts committed by State Employees. **Because within the State and the U.S. Constitution its unlawful to throw a person in prison because of an alleged debt!** The Eighth Amendment generally applies in

criminal proceedings, as the most common locus of government punishment, but The Supreme court has held the Eighth Amendment's prohibition on excessive fines can apply in civil forfeiture proceedings, noting that the text of the amendment is not limited to *"criminal"* cases. Instead, the Court said the relevant constitutional test is whether the government is imposing "punishment," focusing on the purpose of a sanction. In addition, although the Eighth Amendment (like the rest of the Bill of Rights) was understood originally to apply only to the federal government, the Supreme Court has held its prohibitions were incorporated in the Fourteenth Amendment's Due Process Clause, making them applicable to states. The **14<u>th</u> Amendment Section 1: Procedural Due Process Civil:** *All persons born or naturalized in the United State, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. **No State shall make or enforce any law which shall abridge** the* **privileges** *or* **immunities** *of citizens of the United State; nor shall any State deprive any person of life, liberty, or property, **without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws**.* But in accordance to **Arkansas Constitution: Imprisonment for Debt -** No person shall be imprisoned for debt unless he refuses to deliver up his estate for the benefit of his creditors as provided by law or unless there is a strong presumption of fraud. No person shall be imprisoned for failure to pay a fine in a criminal case unless he has been afforded adequate time to make payment, in installments if necessary, and has willfully failed to make payment.

       **<u>Under the Arkansas Constitution. Right to Remedy and Justice</u>** – Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly. As research leads to discovering new information, specific old details will always remain fresh. The brain has distinct way of sorting through what one feels in unforgettable information and data that people seem to forget quickly. Prison sentencing for parents convicted of *'willful'* failure to pay child support remains fresh and unforgettable during the quest for new information. **To be clear, state and federal guidelines are absolute in defining the criteria that states must meet before someone is arrested and convicted for child support payment issues. Section 228 of this statute, of course, is the federal statute, but all states are uniform when including the word *'willfully'* in their guidelines. <u>Unfortunately, many parents are not afforded the right to defend themselves against their accusers and are automatically presumed guilty of willful failure to pay</u>.** All states have some imprisonment penalty on record. Minnesota, Kansas, and Wisconsin sentence convicted parents to three, seven, or nine-month prison stays, respectively. If a parent is convicted for the same crime in federal court, the prison sentence increases to a year. Before a judge can sentence to a prison sentence, the state must prove that **1)** the defendant acted knowingly or

intentionally and **2)** the defendant failed to provide support (National Conference of State Legislatures, 2013). To that accord, many parents without attorney representation are sentenced between several years to 14 years depending on the state. Federal law, at least, specifies that a parent must have failed to pay support for at least two years before the judge can initiate the possibility of a felony charge. States operate under different criteria, but it all equals lengthy jail sentences for those convicted of contempt of court. The maximum penalty for parents convicted in federal court is up to two years. Ten years is approximately the same sentence handed down to a convicted rapist in 2006. The two 'crimes' are not similar, and the punishment for allegedly owing a debt is outrageous! According to the Bureau of Justice Statistics or BJS (2013), the mean maximum sentence length for sexual assault was 96 months or eight years. **The fact that a person in the U.S., can serve a shorter sentence when committing a crime of sexual assault than a person who may be unable to afford child support payments is a reprehensible and frightening reality!** Traveling to Idaho, one will discover that if a parent is convicted desertion and nonsupport of children or a wife, he can be sentenced to 14 years in prison (NCSL, 2013). Traveling back to 2006 the DOJ reported that those convicted of murder did only a few years more than the Idaho sentence for failure to pay support. The mean maximum sentence length for a felony sentence to murder or none that drives the child support system. **The revenues generated from the imprisonment of poor parents equals money that will never be sent to or used by the children. The government is the actual beneficiary of the child support system!** It is time to remove prison as possible punishment for parents, especially when they are poor and are not *'willfully'* failing to pay support. It's been unlawful since 1833 as I aforementioned, and thereby is unconstitutional in every state of the union. Once, the country accomplishes this reform, perhaps the children can truly benefit from the child support system. The one-time helpful system helping abandoned families has been transformed into a money-generating debt collection agency. The welfare recovery program designed as a child support system has overstepped constitutional boundaries and violates the fundamental human rights of unsuspecting non-custodial parents.

The children, and non-custodial parents are the real injured parties and the Courts and State Attorneys/District Attorneys keep stirring the anger up between the two parents. One has to wonder how is this ever considered in the ***"Best Interest"*** of the children? Child Support can prevent fathers from being in their children's lives! And this has been known to drives a wedge between the father/child relationships in general. These fathers are punished, in many instances without Due Process, when they just miss child support payments and then they can't see their children. But on the other hand, if a mother refuses any contact or communications between the father and child, she will face no legal ramifications because generally the courts fail to enforce custody or visitation orders;

including the *"unlawful visitation interference act"* as they mean nothing to these mothers/custodial parents. Where is the justice in all of this for the non-custodial parents? **It appears that in this matter that Lady Justice is wearing a blindfold and can't see the injustices against the non-custodial parents in America!**

It seems to that the Child Support System as it currently stands is a Welfare Recovery System for the States. And it penalizes parents for being low-income and more than half of the nation refuses to pass-through the child support collected to those vulnerable families. And the State workers in routinely ignore the most elementary guidelines, i.e., as the requirement to hold a hearing or offer other safeguards prior to an arrest warrant being issued for contempt of court to the non-custodial parents. And all the while the Senators, Representatives in your State and in Congress remain silent on this crucial issue! **Did you know that Non-Payment is contempt of Court and when a non-custodial parent is held in contempt of court, as it is a civil manner, he or she has no right to legal counsel? Even though that person can end up in jail under these current rules, in direct violation of their constitutional rights?**

There has to be a better way, the current child support system should be replaced with an expansion of welfare and the child tax-credit. Parents must learn to cooperate with child support equally in order to receive TANF and Medicaid benefits**. The current Child Support System is detrimental to the children and the fathers and needs to be completely reformed, or abolished. Because too many good men, and women too that are non-custodial parents are suffering financially, and struggling to connect with their children under the presence system. As it is not fair and equal.** It should be re-examined with a comprehensive and egalitarian solution that benefits the custodial and non-custodial parents equally. As well as strive to united the family unit, not divide them as is the case with the current system in use today in the United States. This has a direct impact on the crime rates in many cities across the country.

**In Helen**- The Legislature went too far in giving government officials the power to change child-support orders issued by judges in divorce cases, the Montana Supreme court has ruled. In a 6-1 decision issued Thursday, the court said a 1997 law providing that authority trespassed on judicial authority and violated the constitutional requirement for separation of power among the branches of government. The state Child Support Enforcement Division in the Executive Branch cannot have blanket ability to alter orders issued by the Judicial Branch, the Justices said in upholding a lower-court decision. The ruling defeat for the administration, which had argued that it needed the authority to quickly modify child support orders to comply with federal law. Otherwise, the state could jeopardize federal funds for the program charged with recovering delinquent child support payments, officials said. While it understands that concern the court said, that ***"cannot, of course, justify unbridled departure from***

*constitutional norms respecting the autonomy of individual branches of government."* The constitutional dispute arose from a 1994 Toole County divorce case between Russell and Camille Seubert. Therefore, Russell Seubert was ordered to pay $828 a month for support of his four children, but his former wife later asked that the court-ordered amount be increased because Russell's income was higher than when the original order was issued. When a District Judge rejected her request, the State Child Support Office said it planned to review the payment order and consider making changes. District Judge Marc Buyske of Shelby issued an order blocking that move and in May 1998 he declared the law giving the agency authority to change court orders unconstitutional. The State appealed, arguing among other things that no legal dispute existed to justify Buyske's order because neither Seubert nor his ex-wife had challenged the law that threw out. The high court upheld Buyske, saying he acted properly because the child support enforcement office had threatened to intrude in a case where the judge still had jurisdiction. Buyske's decision to overturn the law was a legitimate action to protect his jurisdiction and to keep Seubert from having to make higher payments because of a *"Bad Law",* the Supreme Court said. Justice Terry Trieweiler, writing for the court, said the law was fatally flawed because it allowed the Executive Branch to change a court order without a mandatory review by a judge.

**Washington** – In a setback for parents seeking child support, the Supreme Court ruled Monday that the nation's welfare law does not give them a *"Federal Right"* to government help in obtaining the payments they owed. Since 1975, congress has paid States and Counties to collect child support from so-called *"deadbeat dads,"* but the program has had a troubled history. Nationwide, regular payments are being collected in only 18% of the cases. Two years ago, the U.S. 9th Circuit Court of Appeals cleared the way for a class-action lawsuit filed on behalf of 300,000 Arizona parents, who were demanding improvements in a floundering program. The understaffed Arizona State agency was then collecting money for less than 5% of the parents who turned to it for help. Judge Stephen Reinhardt of Los Angeles, writing for the appeals court, said the parents had documented "a range of administrative abuses extending from simple incompetence and bureaucratic bungling to shockingly callous indifference." If Reinhardt's opinion had been affirmed, it likely would have spurred similar class action lawsuits, especially in California. California has turned its program over to County District Attorneys, who now collect payments in only about 13% of the cases. In Los Angeles County, officials concede they have failed to obtain court support orders in 400,000 of their more than 650,000 cases.

But in its unanimous decision Monday, the Supreme Court threw out most of the Arizona lawsuit and said the Child Support Enforcement Act did not *"create an individual entitlement to services."* Congress pays two-

thirds of the cost of the program, which, in turn, requires states to operate their programs in *"substantial compliance"* with goals set in Washington. This systemwide requirement ***"was not intended to benefit individual children and custodial parents," wrote Justice Sandra Day O'Connor, "***and therefore it does not a constitute a Federal Right." The case was brought under a post-Civil War Law that allows suits against state official who violate *"any right"* guaranteed in federal law or the U.S. Constitution. Some State agencies have allegedly collected money for a custodial parent, but failed to turn over the funds! This failure would violate an individual right, lawyers said, and could be the basis of a federal lawsuit.

### Statics of Biases:

**Men account for 85%** of those ordered to pay child support. Even in the rare instance where the mother is ordered to pay child support, courts are not ordering women to pay as much as male (non-custodial parents) providers. Annual child support payments averaged $5,450 from male providers and $3,500 from female (non-custodial parents) providers, **nearly 56% less!** *Source: U. S. Census Bureau*

**12.1%** are informal child support agreements established between the two parents.

**87.9%** of those child support agreements are formal agreements, established in court or through **Title IV-D Agency**.

**United States Supreme Court**

**HICKS V. FEIOCK (1988)**

**NO. 86-787**

**Argued: December 01, 1987**

**Decided: April 27, 1988**

After respondent stopped making $150 monthly child support payments to his ex-wife under a California State-Court order, he was served with an order to show cause why he should not be held in contempt on nine counts of failure to make the payments. At the contempt hearing, his defense that he was financially unable to make payments was partially successful, but he was adjudged in contempt on five counts; was sentenced to a 5 days jail term on each count, to served consecutively; and was placed on probation for three years upon suspension of the sentence. As conditions of his probation, he was ordered to resume the monthly payments and to being repaying $50 per month on his accumulated arrearages. The California Court of Appeal annulled the contempt order, ruling that 1209.5 purports to impose *"a mandatory presumption compelling a conclusion of guilt without independent proof of an ability to pay,"* and is therefore unconstitutional because *"the mandatory nature of the presumption lessens the prosecution's burden of proof".* The court went on to the that for future guidance, however, the statute should be construed as authorizing a permissive inference, not a mandatory presumption. The California Supreme Court denied review.

1.  With regard to the determination of issues necessary to decide this case, the state appellate court ruled that whether the individual is able to comply with a court order is an element of the offense of contempt rather than an affirmative defense to the charge, and that 1209.5 shifts to the alleged contemnor the burden of persuasion rather than simply the burden of production in showing inability to comply. Since the California Supreme Court denied review, this Court is not free to [485 U.S. 624, 625]. Overturn the state appellate court's conclusions as to these state-law issues. However, the issue whether the contempt proceeding and the relief given were properly characterized as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections, raises a question of federal law rather than state law. Thus, the state appellate court erred insofar as it sustained respondent's challenge to 1209.5 under the Due Process Clause simply because it concluded that the contempt

proceeding was *"quasi-criminal"* as matter of California law. Pp. 629-630.

2.  For the purposes of applying the Due Process Clause to a State's proceedings, state law provides strong guidance, but is not dispositive, as to the classification of the proceeding or the relief imposed as civil or criminal. The critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. With regard to contempt cases, the proceeding and remedy are for civil contempt if the punishment is remedial and for the complainant's benefit. But if for criminal contempt the sentence is punitive, to vindicate the court's authority. Thus, if the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, and is punitive if the sentence is limited to unconditional imprisonment for a definite period. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that is payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the act required by the court's order. <u>These distinctions lead to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt.</u> Pp. 631-635.

3.  Although the underlying purposes of particular kinds of relief are germane, they are not controlling in determining the classification of the relief imposed in a state's proceedings. In contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both. **If classification were to be hinged on the overlapping purposes of civil and criminal contempt proceedings, the States will be unable to ascertain with any degree of assurance how their proceedings will be understood as a matter of federal law, <u>thus creating novel and complex problems</u>.** Pp. 635-637.

4.  <u>In respondent's contempt proceeding, 1209.5's burden of persuasion requirement (as interpreted by the state court), if applied in a criminal proceeding, would violate the Due Process Clause because it would</u>

<u>undercut the State's burden to prove guilt beyond a reasonable [485 U.S. 624, 626], doubt.</u> If applied in a civil proceeding, however, this particular statute would be constitutionally valid. There were strong indications that the proceeding was intended to be criminal in nature, such as the notice sent to respondent, which labeled the proceeding as "criminal in nature", and the District Attorney's participation in the case. However, if the trial court imposed only civil coercive remedies, it would be improper to invalidate that result merely because the Due Process Clause was not satisfied. The relief afforded-respondent's jail sentence, its suspension, and his fixed term of probation-would be criminal in nature if that were at all. However, the trial court did not specify whether payment of the arrearages (which, determinate sentence, thus making the relief civil in nature. **<u>Since the state appellate court, because of its erroneous views as to these controlling principles of federal law, did not pass on this issue, it must be determined by that court on remand for its further consideration of 1209.5.</u>** Pp. 637-641

<u>At the hearing, respondent had objected to the application of Cal. Civ. Proc. Code Ann. 1209.5 (West 1982) against him claiming that it was unconstitutional under the Due Process Clause of the fourteenth Amendment because it shifts to the defendant the burden of proving inability to comply with the order, which is an element of the crime of contempt. 1.This objection was rejected, and he renewed it on appeal. The intermediate state appellate court agreed with respondent and annulled the contempt order, ruling that the state statute purports to impose</u> **_"a mandatory presumption compelling a conclusion of guilt without independent proof of an ability to pay,"_ and is therefore unconstitutional because "the mandatory nature of the presumption lessens the prosecution's burden of proof."** 180 Cal. App. 3d 649, 654, 225 Cal. Rptr. 748, 751 (1986). 2. **_In light of its holding that the statute <u>as previously interpreted was unconstitutional</u>, the [485 U.S. 624-629], court went on to adopt a different interpretation of that statute to govern future proceedings_**: The court explicitly considered this reinterpretation of the statute to be an exercise of its _"obligation to interpret the statute to preserve its constitutionality whenever possible."_ Ibid. The California Supreme Court denied review, but we granted certiorari. 480 U.S. 915 (1987).

<u>Nonetheless, if such a challenge is substantiated, then the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and **will not be allowed to defeat the applicable**</u>

**protections of federal constitutional law.** Ibid. This is particularly so in the codified laws of contempt, where the **"civil"** and **"criminal" labels of the law have become increasingly blurred**.

**Georgia Judge declares child support guidelines unconstitutional:**

It's a known fact that child support, almost without exception, has little to do with common sense but everything with burdening non-custodial parents with a punitive tax that is ostensibly intended to look after *"the best interest of the children,"* a tax that instead appears to have the primary goals of:

1. Giving custodial parents, usually mothers, a financial incentive to take their children and walk out of their marriages, most likely to expunge their children's fathers from their children's lives;

2. Punishing non-custodial parents, usually fathers, often to the point where they become destitute and commit suicide because they don't see any way out of this worm hole!'

3. Funding the growth and existence of a massive bureaucracy intended for the collection and distribution of child support moneys.

While it appears that radical forces are behind the creation and furtherance of the child support industry, but they are by no means the only force driving the system. Radical forces see little value in having fathers involved in children's lives and appear to be using child support legislation as a deterrent that is nothing other than a tool for the destruction of our families or to prevent their formation, but it would be wrong to assign all of the blame to them. It seems that Child Support legislation has become an incentive for lucrative business, not only for the Child Support collection industry but also for Lawyers! In the lower courts, about 40 percent of all cases heard deal with child support and child access issues. Child Support guidelines seem to reflect an international consensus. They are much the same the world over and cause enormous devastation of family assets the world over. Not one constitutional challenge launched by father (evident gender discrimination) was ever successful anywhere! That may well have been because any such challenges were launched by men, whereas women usually had little to complain about, because the implementation and application of punitive child support guidelines generally affected men.

What makes the child support guidelines especially onerous is that they generally do not take into account the combined incomes of both parents and do not allocate equitable shares of the costs of child raising to both parents. Usually, the guidelines are designed or applied such that only the gross income of non-custodial parent is taken into account when calculating child support amounts to be paid. Not only are the guidelines in general applied only to the non-custodial parent's income, but not even the costs of child care by the non-custodial parent are taken into account when child support award amounts are calculated, unless, ostensibly, child custody is

equally shared between the parents of a child. Remember, there is always the cash prize of having primary custody. But in one case in particular a mother who was ordered to pay child support to the custodial father of the children she had with him. Unlike many men, for whom the child support amounts to be paid often approach and exceed the total amount of money they earn, this Georgia mother, Michelle Sweat, merely had to pay the amount of $531.30 out of her monthly gross income of $1,585.95. However, she was ordered to pay that amount contrary to the agreement she had made during her divorce from the father, namely that she was not required to pay child support. Subsequently, the mother's monthly gross income rose to $1862. Her expenses totaled $2,127.00 at that time, and she filed for bankruptcy under chapter 13 following which her payments to chapter 13 Trustee were set at $295.00 per month. That monthly payment had apparently not been considered in calculating the child support amount she had been ordered to pay. Thereupon she filed a constitutional challenge!

*Honorable C. Dane on February 25, 2002, the Perkins*, Judge of Superior Court, Alapaha Judicial Circuit, State of Georgia, agreed with her challenge! The judge determined that the only credible evidence supporting the challenge was contained in:

...the study of custody awards in 14 South Georgia counties between 1995-97 conducted by Kent Earhardt, J.D., PH.D, which found that, in 82.2% of contested cases, custody was awarded to the mother. It follows, therefore, that a support obligation under the Guidelines was imposed on the fathers in those cases. ***Ehlers v. Ehlers, 2t64 Ga. 668 (1994)***. There has been no credible challenge to the methodology or the result of the Earhardt study. **Therefore, this Court finds that men are adversely impacted by the Guidelines as applied to a grossly disproportionate degree, which constitutes an impermissibly discriminatory effect on a group based upon there gender!**

**The points discovered in the FINDINGS OF FACT are as follows:**

1. Georgia's presumptive awards rise as a share of obligor after-tax income. No child cost studies show child costs rising as a share of after-tax income. All child cost studies show child costs declining a share of after ta income. The state has presented no evidence that child costs rise as a percentage of household net income...

2. There are no baseline components to the Guidelines. It is not clear what is being rebutted, therefore they

are arbitrary and a due process violation.

3.  The Guidelines do not take into account the large tax-related child cost offsets the custodial parent

    receives…

4.  The presumptive award results in the custodial parent receiving a huge financial windfall- or profit – in

    excess of child costs…

5.  The Georgia presumptive award does not allocate the child support burden according to the parent's

    relative ability to pay. The outcome is that the custodial parent does not contribute to child costs at the

    same rate as the non-custodial parent and, often, not at all.


6.  Evidence presented…show that the Guideline presumptive awards include such large amounts of hidden

    alimony (presumptive award less an economic based award) that a non-custodial parent is unable to

    provide for a child when in the same extent as in the custodial parent's household. Presumptive awards

    have been shown to typically exceed total actual costs [of child raising] according to the U.S. Department

    of Agriculture…Such excessive child support awards are not in the best interest of the child…[and] leave

    the non-custodial parent in poverty while the custodial parent enjoys a notably higher standard of living!

7.  The presumptive award for low-income obligors (for example, minimum wage workers) pushes low-

    income obligors below the poverty level. A presumptive award that leaves the obligor with less income

    than needed for basic living needs creates an extraordinary burden for the obligor and, potentially, an

    additional burden on taxpayers. This is contrary both to public policy and common sense.


8.  The Guidelines do not take into account custodial parent income! The presumptive child support award

    does not vary with family income only obligor income. This is not economically rational and violates equal

    protection…

9.  Child costs of the only the custodial parent is covered by the Guidelines. Similar costs incurred when the

    child is with the non-custodial parent do not receive similar consideration…Each parent has an equal duty

    to provide financially for the children when in the care of the other parent…in actual practice, typically the

non-custodial parent is not absent and incurs substantial child costs that the guidelines do not require the custodial parent to contribute. This violates equal protection and do not meet the financial needs of the children when they are in the care of the non-custodial parent.

10. Medical Insurance costs are not treated the same for all obligors. The presumptive award includes typical medical expenses. The Guidelines allow the Court to either treat an obligor's payment of the children's medical insurance as an add-on or as a credit toward the presumptive award. This dissimilar treatment violates equal protection...The difference between these alternatives is $140 per month for the obligor [Michelle Sweat].

11. The Guideline criteria for deviation do not give any guidance on how to apply the deviations in consistent manner. This is unconstitutionally vague and generally results in no deviations in most cases even when the circumstances to deviate exist.

12. The Guidelines bear no relationship to the constitutional standards for child support of requiring each parent to have an equal duty in supporting the child.

13. The Guidelines interfere with a non-custodial parent's constitutional right to raise one's children without *"unnecessary"* government interference. The Guidelines are so excessive as to force non-custodial parents to frequently work extra jobs for basic needs- detracting from parenting without state justification. Low – income obligors are frequently forced to work for cash economy to survive as a result of child support obligations that if paid push the obligor below the poverty level. This is result of automatic withholding of child support with payroll jobs and use of guidelines that presumptively push minimum wage obligors below the poverty level. As these workers are forced to *"disappear"* into unofficial society, these obligors are deprived of the constitutional right to raise their children without unnecessary government intrusion. In fact, any government mandate beyond basic child costs interferes with this right to privacy as occurs with the current guidelines.

Judge Perkins of the Georgia Superior Court then covered in his decision the constitutional issues to be considered with respect to the evidence assessed in the Finding of Facts and with respect to issues of Due Process [of the law] according to precedents. And I must say that it is not only remarkable and refreshing to see a judge state issues at hand so clearly and so precisely:

Given the very nature and purpose of the Guidelines, this Court finds that there is an overriding governmental pecuniary purpose involved. ***D.H.R. v. Ofutt, 271 Ga. App. 823 at 825 (1995).*** This Court finds that the Guidelines were hastily enacted and left unchanged without sufficient examination of relevant economic data and for those reasons as well as the gross deviation from all child cost studies as noted previously, finds them to be arbitrary and capricious. See, ***Sierra Club v. Martin, 168 F. 3d 1 (11th Cir., 1999).*** With all due respect to the members of the Governor's Commissions on Child Support (hereinafter, the *"Commission")* in both 1998 and 2001, it is clear that only one member in 1998, Mr. Mark rogers, and none in 2001 were properly qualified by education, background and experience to accurately assess the economic and financial intricacies of the Guidelines. This, too, the Court finds to be indicative of arbitrary state action. This Court finds that this constitutes further proof of arbitrariness on the part of the state and, if left in place, may rise to a volitional violation of the constitutional protections afforded the citizens of this State.

The egregiously different burdens and benefits placed on persons similarly situated but for the award of custody, i.e., parents with the obligation to support their child(ren) and the same means for doing so as when they were married, has been explained at length above. **<u>This Court finds that such disparate treatment violates the guarantees of equal protection.</u>**

**Relating to the right to privacy, he stated:**

it has been long recognized to apply to *"family"* concerns whether the family exists within the confines of marriage or not... by requiring the non-custodial parent to pay an amount in excess of those required to meet the child's basic needs, as the economic analysis has shown, the Guidelines impermissibly interfere with parental decisions regarding financial expenditures on children...

In regards to unconstitutional taking of property, he stated that the state-induced poverty in which Michelle Sweat finds herself will prevent her from being able to afford to buy the Court transcripts that she'll need, if required, to make an appeal, and therefore ordered the State of Georgia to pay for the required transcripts. Furthermore, he stated that, in *"seeking to impose an award under the Guidelines against Ms. Sweat for the purpose of the state continuing to receive federal funds,"* Georgia's Department of Human Resources' action *"constitutes a public taking for a public purpose."*

**About recent supporting foreign opinion, the judge stated:**

One issue of equal protection is taking into account all of an obligor's dependents – not just those involved in the instant case...Any formula for deviation on this matter that Georgia DHR may have is not presumptive, not statutory, and is not applied statewide in all cases in which an obligor has additional dependents other than those in the instant case...Guidelines without such presumptive formula likewise violate equal protection requirements as related to multiple family situations and are unconstitutional.

**With respect to the constitutionally acceptable child support standard, the good judge stated that,**

This Court finds, as a matter of law, that a constitutionally sound standard for the determination of child support guidelines can readily be determined.

*First,* it must acknowledge the principle...that both parents are obliged to support their children in accordance with their relative means to do so. The Supreme Court of the United States has provided ample reason to conclude that any guideline discriminating against either parent would be found constitutionally defective. The decisions of our sister States in holding unconstitutional statutory presumptions that custody of children of *"tender years"* should be awarded to the mother is also persuasive ...Procreation is both a joint act and a joint responsibility.

*Secondly*, it must conform to long acknowledge limitations on government intrusion into the rights of families. That is, the government's interest in family expenditures on children, whether that family exists before or after the dissolution marriage, or even in the absence of marriage, is limited to ensuring that the children's basic needs are met. Not extravagances, not luxuries, but needs. Once that occurs, government intrusion must cease...

*Third* and final criteria is that the means chosen for the purpose of determining need and allocating each parent's respective responsibility in meeting that need, whether in the form of a presumptive guideline or otherwise, must be based on a rational relationship between the predicate facts and the conclusion(s)

directed... This standard is not dissimilar to the former needs vs. ability to pay standard, but with the additional criteria that he needs are not excessive, the ability to pay is that of both parents and that the method of calculation is economically rational.

**As explained above, the Guidelines fail miserably in meeting these standards.**

In light of the Georgia child support guidelines being unconstitutional, Michelle Sweat shall not be required to pay Samuel E. Sweat any child support based upon her gross income of $1,862 per month, the father's gross income of $2,647.50 per month, and the mother having parenting time with the children at least 20 percent of the time. The mother shall, however, continue to provide health insurance for the children which currently costs approximately $70 per month for so long as it is available through her employer. The mother shall also pay 14.3 percent of any unreimbursed medical expenses of the children that exceed $250 per year. This percentage is based on her share of combined income above self-support needs.

For the foregoing reasons, the Defendant's Motion to Declare Georgia's Support Guidelines **Unconstitutional** is hereby **GRANTED**.

**SO ORDERED** this 25th day of February, 2002.

Signed by HONORABLE C. DANE PERKINS

Judge of Superior Court

Alapaha Judicial Circuit

State of Georgia

## II.    VENUE

Venue is proper in this district under Title 28 of the United States Code, Section 1392 since it is a district in which one or more defendants reside.

1. Without the assistance of this Court, **Mr. Richmond** will suffer immediate irreparable and substantial harm and injury as result of the deliberate and willful actions of the Defendant(s).

2. The Plaintiff has made reasonable efforts to notify Defendant(s) of the filing of this Complaint and the hearing scheduled on Plaintiff's request for a temporary restraining order, for _____ p.m.

   On _____, 20 _____ at the Federal Building. In support of this motion, attached hereto as *Exhibit "A"* documents sent to **Mr. Richmond** via **Arkansas Office of Child Support Enforcement Division of Child Support Services** which is incorporated herein by reference for all purposes is the Affidavit of Plaintiff's acting Pro Se, and filing Memorandum of Law regarding the legality of Title IV-D. And that there is no Remedy or Recourse as a result of this practice by OCSE, leaving the Plaintiff without any recourse or defense which is in and of itself unlawful. Because this is a Tribunal and it cannot mandate and govern families of the United States.

3. A Temporary Restraining Order is necessary to preserve the status quo, to prevent the irreparable injury to Me personally that would result from the garnishment of wages, and incomes taxes. And to allow the Court to render effective relief would be significantly impaired, of **Arkansas Office of Child Support Enforcement** to proceed taking monies from my check each week or bi-weekly. Especially after trial, they are found to be unlawful actions on the part of the Defendants.

4. Granting requested preliminary relief will serve for the greater interest of justice indeed being fair and equitable. So, that public perception of the justice system is fair for all American Families.

This Emergency Motion is supported by a concurrently filed Memorandum of Law in Support of the unlawful practices executed by **Arkansas Office of Child Support Enforcement**.

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the ___12___ day of ___January___, 2024, I will hand deliver/or by Certified Mail the foregoing document to the following:

**Arkansas Office of Child Support Enforcement**

_Corey D. Richmond_  1/12/24

**Corey D. Richmond, Pro Se**

**503 East 40th Avenue**

**Pine Bluff, Arkansas 71601**

**(708) 690-7937**

**WHEREFORE**, the United States Prays that the Defendants and all persons acting on its behalf be enjoined from garnishing my wages, and my incomes taxes refunds, and any other processes that they may use to collect alleged child support. Plaintiff further Prays for such other general or specific relief may be proper in the premises.

Respectfully submitted,

1/12/24

Corey D. Richmond, Pro Se

503 East 40th Avenue

Pine Bluff, Arkansas 71601

(708) 690 -7937